IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 25, 2005 Session

## STATE OF TENNESSEE v. JAMES N. HARRELL

**Appeal from the Circuit Court for Warren County**
**No. F-9808     Larry B. Stanley, Jr., Judge**

---

**No. M2005-01074-CCA-R9-CO - Filed March 6, 2006**

---

Defendant, James N. Harrell, seeks interlocutory review of the Warren County Circuit Court's affirmance of the State's denial of his application for pretrial diversion. Defendant is charged with vehicular homicide by recklessness, four counts of reckless aggravated assault, underage possession and consumption of alcohol, and underage driving while impaired. After unsuccessfully requesting pretrial diversion, Defendant appealed to the trial court, who determined that the district attorney general had not abused his discretion when denying Defendant's request. After a thorough review of the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 9; Judgment of the Circuit Court is Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. JAMES CURWOOD WITT, JR., J., filed a dissenting opinion.

Michael Galligan, and John Partin, McMinnville, Tennessee, for the appellant, James N. Harrell.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Dale Potter, District Attorney General; and Larry Bryant, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the afternoon of June 8, 2003, Defendant, who was 17-years-old, and two of his friends, C.J. Holmes, and Matt Brown, met up with three girls, Katie Hillis, Brooke Green, and Shannon Green, in the parking lot of the Manchester Food Lion. The group got into Defendant's pick-up truck, and Defendant drove to the Par Four Market where he, Matt, and Brooke entered the store where Defendant purchased a 12-pack of Bud Light beer. Defendant carried it back to his vehicle. Once in the vehicle, the three boys began drinking beer. Defendant drank a beer while driving. The group then drove to a deer stand on Defendant's farm where they stayed for approximately 15 to 45 minutes, drinking beer and talking. The group then left the field to drive around and, according to some witnesses, "jump hills." It began raining lightly, and Defendant's vehicle's back end began

to swerve. He overcorrected, and his vehicle swerved off the road, hitting a tree. Upon impact, all of the occupants, none of whom were wearing seat belts, were ejected from the vehicle and were rendered unconscious. One occupant, Shannon Green, died as a result of the accident. The remaining occupants suffered various injuries.

Defendant was charged as a juvenile, and the state successfully sought to have him transferred and tried in adult criminal court. At his transfer hearing, the surviving occupants of the vehicle, including Defendant, testified about the events that transpired leading up to the accident. Those witnesses estimated Defendant's speed to be anywhere from 95 miles per hour to 60 miles per hour. Additionally, various occupants testified that they saw Defendant consume three to four cans of beer; however, Defendant stated that while he drank from three different beer cans, he only consumed a total amount of one and a half beers.

The accident occurred at approximately 4:30 p.m., and at 7:07 p.m., Defendant had a blood alcohol level of .0205. His blood alcohol level was retested at 7:45 p.m., at which time it was .0092, which, according to a Tennessee Bureau of Investigation (TBI) special agent, is technically a negative blood alcohol reading. Expert witnesses for both the state and defense testified about extrapolating Defendant's blood alcohol level at the time of the accident from his blood alcohol levels several hours after the accident. TBI Special Agent Michael Little testified that by using a formula which allows him to extrapolate back to the time of the accident, he estimates that Defendant had between a .04 and .07 blood alcohol level at the time of the crash. Medical examiner Dr. Bruce Levy also testified that through his extrapolation methods, he estimates that Defendant had a .06 blood alcohol level at the time of the crash, which is consistent with someone consuming three to four beers. Charles Warren Harlan, a noted toxicology expert who has testified in thousands of cases, testified that given the known low levels of Defendant's blood alcohol, an extrapolation to Defendant's blood alcohol level at the time of the accident was neither feasible nor reliable.

Additionally, two accident reconstruction experts testified at the hearing. The state's witness, a crash reconstructionist with the Tennessee Highway Patrol, testified that he observed "scallop marks" made by Defendant's vehicle's tires at the crash scene and that these marks indicated that Defendant's vehicle was airborne. The state's expert further testified that Defendant was traveling at a minimum of 79 miles per hour when his vehicle crashed. Defendant's expert witness, an emeritus professor of the University of Tennessee, testified that his analysis of the accident scene revealed that Defendant's vehicle was not airborne and that the vehicle was traveling between 68 and 81 miles per hour at the time of the accident.

Defendant testified that he did not brake when he started to lose control of his vehicle because he believed braking would cause him to wreck his new truck. He testified that he has been haunted by this accident and would do anything to change history. At the time of the transfer hearing Defendant was working 12-hour days. His two employers, his grandmother and David Bryan, testified that Defendant was hard-working and dependable and that they believe that Defendant has been greatly affected by the accident and death of Shannon Green.

After the case was transferred to criminal court, Defendant filed a petition for pretrial diversion, which the prosecutor's office subsequently denied. Defendant then appealed the denial to the Warren County Circuit Court. After conducting a hearing in which the court heard arguments by counsel, the court concluded that the prosecutor had not abused his discretion when denying Defendant's request for pretrial diversion. Specifically, the court found that the prosecutor's response denying Defendant's request demonstrated that he had considered all relevant criteria, including the events comprising Defendant's crime, his character, his education, his employment history, his demonstration of remorse, and his admission of culpability or lack thereof.

In order to be eligible for pretrial diversion, a defendant must not have been previously granted pretrial or judicial diversion; must not have a prior misdemeanor conviction in which Defendant served a sentence of confinement or a prior felony conviction within a five-year period after completing the sentence or probationary period for the prior conviction; and must not be seeking diversion for a Class A or B felony, a sexual offense, driving under the influence, or vehicular assault. Tenn. Code Ann. § 40-15-105(B)(i)(a)-(c) (2003). "A person who is statutorily eligible for pretrial diversion is not presumptively entitled to diversion." *State v. Yancey*, 69 S.W.3d 553, 557 (Tenn. 2002) (citing *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999)).

The decision whether to grant pretrial diversion rests within the discretion of the district attorney general. *See* Tenn. Code Ann. § 40-15-105(b)(3) (2003); *State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983). The process of applying for, adjudicating, and reviewing pretrial diversion is attended by formulaic rules.

The burden is upon the defendant, "in the first instance, to provide the prosecuting attorney with sufficient background information and data to enable that officer to make a reasoned decision to grant or deny the relief sought." *State v. Herron*, 767 S.W.2d 151, 156 (Tenn. 1989), *overruled on other grounds by Yancey*, 69 S.W.3d at 559. To carry the burden, an applicant should provide the prosecutor with "as complete an application as circumstances warrant." *State v. Winsett*, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993).

Even though the defendant has the burden to demonstrate his or her eligibility and suitability for pretrial diversion, the prosecutor has specific obligations, especially when he or she denies the application. *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999). Our appellate courts have forged the following guidelines for prosecutors' use when considering applications for pretrial diversion:

> (1) The prosecutor should focus on the defendant's amenability to correction. *Id.* at 156.
>
> (2) The prosecutor must consider (a) the circumstances of the offense, (b) the defendant's criminal record, (c) the defendant's social history, (d) the physical and mental condition of a defendant where appropriate, and (e) the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and the

defendant. *Id.*; *Hammersley*, 650 S.W.2d at 355; *see also State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993).

(3) "[T]he circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if [(a)] all of the relevant factors have been considered as well," *Curry*, 988 S.W.2d at 158 and (b) only when the circumstances are of such overwhelming significance that they necessarily outweigh all other factors, *Washington*, 866 S.W.2d at 951.

(4) Although this court has affirmed the denial of pretrial diversion where the failure to admit the crime and/or express remorse revealed that the defendant had been less than truthful with the court, *see State v. Karen Sue Kelsey*, No. 03C01-9603-CC-00117, slip op. at 7 (Tenn. Crim. App., Knoxville, Oct. 29, 1997), *perm. app. denied* (Tenn. 1998); *State v. Martha Jean Frasier*, No. 01C01-9601-CC-00012, slip op. at 12-13 (Tenn. Crim. App., Nashville, Dec. 13, 1996); *State v. Nease*, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1986), remorse per se has been held to be immaterial in determining suitability for pretrial diversion, *see State v. Stoney Gene Golden*, No. 88-146-III, slip op. at 3 (Tenn. Crim. App., Nashville, Apr. 12, 1989), *perm. app. denied* (Tenn. 1989). On the other hand, the failure of the defendant to admit guilt is not, in and of itself, a proper basis for denying diversion. *See State v. Dewey L. Clark*, No. 03C01-9706-CR-00227, slip op. at 7 (Tenn. Crim. App., Knoxville, July 16, 1998); *State v. Christie Quick*, No. 01C01-9510-CC-00323, slip op. at 5-6 (Tenn. Crim. App., Nashville, Feb. 20, 1997); *State v. Carl Capps*, No. 47, slip op. at 1 (Tenn. Crim. App., Knoxville, June 13, 1989); *cf. State v. King*, 640 S.W.2d 30, 33 (Tenn. Crim. App. 1982) (pretrial diversion cannot be conditioned upon entry of guilty plea), *overruled on other grounds by State v. Sutton*, 668 S.W.2d 678, 680 (Tenn. Crim. App. 1984).

(5) A denial of the application (a) must be written and (b) must contain not only an enumeration of the evidence the prosecutor considered but also a discussion of the weight given to each factor, *State v. Pinkham*, 955 S.W.2d 956, 960 (Tenn. 1997); *see Curry*, 988 S.W.2d at 157 (explaining importance of detailed, written denial); *Winsett*, 882 S.W.2d at 810, and of why unfavorable factors outweigh favorable ones, *Herron*, 767 S.W.2d at 156.

(6) "In addition to the foregoing items which the prosecutor should include in a written record, he or she should also identify 'any factual

> disputes between the evidence relied upon and the petitioner's application.'" *Pinkham*, 955 S.W.2d at 960; *see Winsett*, 882 S.W.2d at 810.

If the application is denied, the defendant may seek a writ of certiorari in the trial court. Tenn. Code Ann. § 40-15-105(b)(3) (2003). The Code and the appellate courts have prescribed the procedure for the petitioner to follow:

> (1) The compiled record should be attached to the petition. *Winsett*, 882 S.W.2d at 810.
>
> (2) In the petition, the defendant should identify any disputed facts which the prosecutor has not identified. *State v. Lane*, 56 S.W.3d 20, 26 (Tenn. Crim. App. 2000).
>
> (3) The defendant has the burden of proving that the district attorney abused his or her discretion in denying diversion, *State v. Watkins*, 607 S.W.2d 486, 488 (Tenn. Crim. App. 1980), a process that may entail showing an absence of any substantial evidence in the record to support the prosecutors's denial of pretrial diversion, *Lane*, 56 S.W.3d at 26; *see State v. Houston*, 900 S.W.2d 712, 714 (Tenn. Crim. App. 1995).

Upon receiving a petition for certiorari filed by an aggrieved applicant for pretrial diversion, the trial court must follow a prescribed procedure:

> (1) The trial court limits its consideration to the evidence which was before the prosecutor and to the reasons given by the prosecutor in denying diversion. *State v. Brown*, 700 S.W.2d 568, 570 (Tenn. Crim. App. 1985); *Winsett*, 882 S.W.2d at 809.
>
> (2) The trial court may conduct a hearing only to resolve any factual disputes raised by the prosecutor or the defendant; the court may not hear additional evidence. *Curry*, 988 S.W.2d at 157-58.
>
> (3) The trial court must also adhere to the same case-by-case balancing procedure that is imposed upon the prosecutor. *Herron*, 767 S.W.2d at 156.
>
> (4) The trial court must state its findings in writing. *Id.*

If the trial court declines to reverse the prosecutor's denial of diversion, the defendant may seek interlocutory review in this court. *See generally* Tenn. R. App. P. 9, 10; Tenn. R. Crim. P. 38. If

review is granted by this court, our review is confined to determining whether the trial court's determination is supported by a preponderance of the evidence. *Curry*, 988 S.W.2d at 158.

We first note that the state does not dispute that Defendant is an eligible candidate for pretrial diversion. Thus, the resolution of Defendant's appeal turns on our determination of whether the trial court properly found that the district attorney general did not abuse his discretion when denying Defendant's request for pretrial diversion.

Defendant argues that in his letter denying Defendant's petition for pretrial diversion, the district attorney general merely gave perfunctory consideration to several factors weighing in favor of pretrial diversion, including Defendant's attainment of a G.E.D. and his consistent and impressive employment history. The district attorney general eventually concluded that these factors were favorable to a grant of pretrial diversion; however, Defendant complains that the district attorney general failed to articulate how these factors were weighed. Defendant further complains that the district attorney general failed to clarify whether two factors discussed in his letter were ultimately deemed to be favorable or unfavorable to a grant of pretrial diversion: (1) Defendant's stability of residence based on his consistent residence with his parents and (2) his negligible prior involvement with the criminal justice system based on juvenile truancy charges filed his senior year and an uncharged act of purchasing alcohol as a minor.

Defendant argues that the district attorney general erroneously concluded that Defendant demonstrated little remorse for his actions and failed to take responsibility for them. Specifically, Defendant disagrees with the district attorney general's conclusion that Defendant's protestations of remorse and sorrow are insincere. Defendant notes that the prosecutor's conclusion is based on Defendant's testimony at his transfer hearing that he did not brake when his vehicle began to swerve because he did not want to wreck his new pick-up truck. However, Defendant argues that the sincerity of his remorse is unrelated to his thoughts about avoiding the accident before the accident occurred. Moreover, after explaining his motivation for not braking, the district attorney general asked Defendant whether his vehicle was more important than his passengers' lives, and Defendant responded that it was not. Finally, Defendant contends that the district attorney general's reliance on Defendant's alleged failure to take responsibility for his actions is impermissible because this court has stated that a grant of pretrial diversion cannot be conditioned upon a defendant's admission of criminal conduct. *See, e.g., King*, 640 S.W.2d at 33.

The state asserts that the district attorney general elucidated more than adequate reasons for denying pretrial diversion: (1) Defendant failed to fully acknowledge his guilt, (2) he demonstrated a lack of genuine remorse, and (3) granting pretrial diversion would fail to properly deter future similar crimes. Specifically, the district attorney general noted that Defendant sought to minimize his wrongdoing by testifying that he was traveling approximately 60 miles per hour at the time of the accident when expert and eye witness testimony reflected that his actual speed was somewhere between 79 and 95 miles per hour; he claimed to have consumed one and a half beers while witnesses saw him consume three or four beers and expert testimony reflected that his blood alcohol level was consistent with consuming three to four beers; and he testified that he did not actually

purchase the 12 pack of beer although all witnesses testified that he did indeed purchase it. Next, the district attorney general noted that Defendant's expressions of remorse seemed insincere when considering his testimony that he deliberately did not brake during the accident to avoid wrecking his new pick-up truck. Finally, the district attorney general concluded that granting pretrial diversion would undermine the seriousness of Defendant's offense and convey a message that no consequences would result from reckless behavior.

We note that in his five-page letter, the district attorney general carefully considered and thoroughly discussed all criteria relevant to his pretrial diversion determination, and the comprehensiveness of his letter has greatly aided our appellate review.

The circumstances of the offense(s) and the need for deterrence may justify the denial of pretrial diversion if all relevant factors have been considered, as was done in this case. *State v. Curry*, 988 S.W.2d 153, 158 (Tenn. 1999). While the prosecutor in the case *sub judice* did not use the specific words of "circumstances of the offense," he did specifically detail the various facts of the offenses in his letter denying pretrial diversion. However, the prosecutor's reference to "the public interest and how justice [would not be] served by granting pre-trial [sic] diversion in this case" is a reference to the circumstances of the offenses. The prosecutor outlined Defendant's illegal purchase of beer as a seventeen-year-old, his sharing of the beer with two other juveniles, consumption of beer by Defendant, and extremely reckless driving on a narrow, hilly road at speeds up to 94 miles per hour. Defendant's petition for writ of certiorari to the trial court does not contest any of the facts relied upon by the prosecutor in denying pre-trial diversion. In fact, the petition merely recites the charges brought against Defendant, states that Defendant falls within the category of statutorily eligible offenders to be placed on pretrial diversion, and makes the bare conclusory statement that "[t]he District Attorney General has abused his prosecutorial discretion by refusing to agree to grant [Defendant] pretrial diversion."

Defendant in this case had the burden in the trial court of proving that the prosecutor abused his discretion in denying pretrial diversion. *State v. Watkins*, 607 S.W.2d 486, 488-89 (Tenn. Crim. App. 1980). This entails a showing that there is an <u>absence of any</u> substantial evidence to support the prosecutor's decision to deny diversion. *Curry*, 988 S.W.2d at 158 (citing *State v. Pinkham*, 955 S.W.2d 956, 960 (Tenn. 1997)) (emphasis added).

The petition for writ of certiorari fails to set forth facts contained in the record which would show that the prosecutor abused his discretion by denying diversion. The transcript of the certiorari proceedings in the trial court contains only statements by counsel for Defendant and the prosecutor and statements by the trial judge. Notwithstanding the fact that defense counsel set forth certain disputes in the facts as related by the prosecutor in his letter denying diversion, statements of counsel are not evidence. *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988); *State v. Dobbins*, 754 S.W.2d 637, 640 (Tenn. Crim. App. 1988). Interestingly, defense counsel did emphasize at the certiorari hearing, on more than one instance, that the prosecutor failed to focus upon Defendant's "amenability for correction." This was, in fact, considered by the prosecutor in paragraph 8 of his letter, though referred to as Defendant's "amenability for rehabilitation." The prosecutor did include

Defendant's failure to "recognize" his fault in the offenses. However, the prosecutor also included in his letter that: (1) Defendant first stated he was driving approximately 45 miles per hour, then later said 60-62 miles per hour, while expert testimony put the speed at 79 to 94 miles per hour; (2) Defendant denied purchasing the beer and stated that Matt Brown purchased the beer, while the store's clerk and Matt Brown both stated Defendant purchased the beer; (3) Defendant stated that he only drank one to one and one-half beers while all other occupants of the vehicle who were with Defendant stated that he drank three to four beers and expert testimony corroborated the testimony of higher consumption; and (4) Defendant stated in his application for pretrial diversion that "there was no evidence that he was under the influence of alcohol at the time of the offense[s]" despite the fact that expert and lay testimony showed that he had consumed at least three to four beers. While no testimony placed Defendant at or above the "legal" limit of intoxication of an "adult," 0.08, *see* T.C.A. § 55-10-401(a)(2) and 55-10-408, clear legislative intent establishes "impaired" driving of a person between the ages of 16 and 21 at 0.02. *See* T.C.A. § 55-10-415. Defendant checked the answer "no" to question number 29 in the pretrial diversion application, which is "[w]as there evidence the defendant was under the influence of alcohol that actually contributed to the offense?"

These observations are particularly important in light of Defendant's failure to put on proof contesting the facts relied upon by the prosecutor. At least implicitly, the prosecutor found that Defendant's lack of candor on the subjects weighed against Defendant's amenability for correction. This is a permissible conclusion by the prosecutor. *See State v. Dowdy*, 894 S.W.2d 301, 305-06 (Tenn. Crim. App. 1994).

Regarding deterrence as a basis to deny pretrial diversion, the prosecutor did not specifically state that the offenses of vehicular homicide, reckless aggravated assault, underage possession and consumption of alcohol, and underage driving while impaired were crimes that necessitated the general need for deterrence in his jurisdiction or the state as a whole. *See State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000). However, a fair reading of *Hooper*, reveals that the issue was the proof necessary to establish deterrence when deterrence was the sole reason for denying probation. *Id.* at 3, 4, 6. Deterrence in a pretrial diversion case is guided by the same considerations as deterrence in probation cases. *Id.* at 8, n. 9 (citing *State v. Hammersley*, 650 S.W.2d 352, 354 (Tenn. 1983)).

As stated above, the prosecutor properly considered the particular circumstances of the offenses, as well as Defendant's serious lack of amenability to correction in denying pretrial diversion. Thus, deterrence is an additional, not a sole, factor to deny pretrial diversion. There is no question that the prosecutor identified a factual basis to deny pretrial diversion based on deterrence:

> 10. The State has considered the deterrent effect that granting pre-trial [sic] diversion may have on others. This wreck took the life of Shannon Green and resulted in serious injuries to four (4) other occupants. The two female survivors, Brook Green and Katie Hillis, have had to undergo psychological counsel and one has attempted suicide as a result of this incident. The defendant was consuming alcohol and driving well above the speed limit on

a narrow, hilly, two-lane road. He never attempted to brake after losing control of the vehicle, valuing his new truck more than the safety of his passengers. To reward such behavior with pre-trial [sic] diversion would have no deterrent effect and may well send a message that there is little consequences to be had for driving and speeding recklessly resulting in the death of an innocent party.

Paragraph 10, prosecutor's letter denying diversion.

Taken in context, the prosecutor considered all of the offenses and their interrelationship with each other, which culminated in the ultimate results of the offenses. In other words, deterrence might not be applicable only to a charge of vehicular homicide in this case, or only to four (4) charges of reckless aggravated assault, or to the remaining offenses if they had only been individually committed and individually considered. However, combining the illegal purchase, distribution, and consumption of beer, with reckless driving (jumping hills) and with excessive speed (up to 94 miles per hour), resulting in the crash of a vehicle containing six (6) teenagers with the death of one and serious injuries to the remaining occupants, a factual basis for deterrence was established.

The facts relied upon by the prosecutor were, in effect, totally undisputed. The prosecutor considered all relevant criteria. Considering the prosecutor's letter in its entirety, and not piecemeal, it is clear that there is substantial evidence to support the prosecutor's determination to deny pretrial diversion.

The trial court's decision denying relief to Defendant is supported by a preponderance of the evidence. *State v. Curry*, 988 S.W.2d 153, 158 (Tenn. 1999). Accordingly, Defendant is not entitled to relief in this appeal.

**CONCLUSION**

Based on the foregoing review and analysis, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE