# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
March 1, 2011 Session

## ROBERT EARL SMITH v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-09026     Chris Craft, Judge**

---

**No. W2010-00305-CCA-R3-PC  - Filed September 7, 2011**

---

The petitioner, Robert Earl Smith, appeals from the denial of post-conviction relief by the Criminal Court for Shelby County. He was originally convicted of second degree murder and received a sixty-year sentence as a Range III, career offender. In this appeal, the petitioner claims that he received ineffective assistance of counsel based on the following grounds: (1) trial counsel's failure to argue the standard of proof beyond a reasonable doubt during closing argument; (2) trial counsel's failure to prepare and investigate the case; (3) trial counsel's failure to challenge the validity of four prior felony convictions at sentencing; and (4) appellate counsel's failure to argue the validity of the same prior convictions on appeal.[1] Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Michael R. Working, Memphis, Tennessee, for the Defendant-Appellant, Robert Earl Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alanda H. Dwyer, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

---

[1] The petitioner raised significantly more claims of ineffective assistance of counsel in his petition for post-conviction relief and orally before the post-conviction court. In his brief to this court, he limits his claims to those addressed in this appeal. As such, all other claims are waived.

**Background**.  Based on the issues raised by the petitioner, it is necessary to include a thorough review of the evidence as summarized by this Court on direct appeal:

The State presented witnesses who were present at the time when Anthony Dorsey Sr., was fatally shot by [the petitioner].  Their accounts were, in the main, consistent as to the events concerning the shooting on October 4, 2002.  Those individuals present during the offense and testifying for the State were: Anthony Dorsey, Jr., Lacotra Blair, Taneka Blair, Antoinette Dorsey, Marcus Stephen, Reginald Sanders, and Christine Sanders.  Reginald Sanders was the victim's nephew.  Christine Sanders was a neighbor who lived in the adjoining duplex to the victim and his family.  The remaining witnesses were the victim's children.

On October 3, 2002, two eleven-year-old boys engaged in a fight.  They were Anthony Dorsey, Jr., the victim's son, and Travis Watt, the son of [the petitioner].  On the next day, the boys had another encounter in which Travis Watt struck Anthony Dorsey, Jr., with a pipe, causing a knot and bleeding.  The victim, Dorsey, Sr., was informed of this by his son, and he first reacted by saying that they would settle the matter with the school principal on the coming Monday.  Anthony, Jr., had seen [the petitioner] pick up Travis Watt and his younger brother after the October 4 fight and leave in a black car with a red stripe.  The victim and Anthony, Jr., went in search of [the petitioner], but the search was unavailing and they returned home.  Anthony, Jr., left with his cousin, Reginald, and they were later picked up by Marcus Stephen and his friend Marcus Hall, aka "Black."  Hall was driving Marcus Stephen's car.  In the interim, [the petitioner], accompanied by his brother, Albert Smith, and [the petitioner's] two sons, Travis Watt and Marco, had gone to the victim's residence.  The victim met [the petitioner's] in the victim's front yard where a discussion ensued.  The group in Marcus Stephen's car arrived and walked toward the assembly in the yard. [The petitioner] then pulled a handgun and grabbed Marcus Stephen, threatening to blow his head off. [The petitioner] also ordered the group not to move.  Reginald Sanders ran to the house, and [the petitioner] pursued him.  The victim followed and, on the porch, grabbed [the petitioner], restraining him from entering the residence.  The victim and [petitioner] struggled until [the petitioner] freed his arm and began firing the gun.  The victim collapsed on the porch. [The petitioner] then fell backward from the porch, still firing the gun. [The petitioner] continued to fire the weapon as he regained his feet and ran to the car.  The car, driven by Albert

-2-

Smith, then sped away. Travis Watt sustained a bullet wound to the arm as they were escaping. He stated that he saw an individual emerge from the victim's house, shooting a weapon. Albert Smith stated that both Marcus Hall and Reginald Sanders were firing at their car as the defendant's group left the scene. None of the State's witnesses admitted to seeing anyone with a gun except [the petitioner].

Officer Ricky Davison of the Memphis Police Department crime response unit, testified that a .9 mm casing was found on the porch and another was found near the foot of the driveway. Three .32 caliber casings were found in the lawn in a straight line toward the street. No weapons were recovered, and no ballistic tests were performed.

Tara Jones testified that she dated Albert Smith in October 2002. Albert Smith had her car on October 4. When she saw her car several days later, it had bullet holes in the passenger side and the passenger window was broken out. On October 5, she had borrowed a car and taken [the petitioner] and Albert Smith to attempt to rent a car. They were unsuccessful due to a faulty credit card. She then delivered [the petitioner] and his girlfriend to a motel where they rented a room.

Dr. O.C. Smith, an expert in forensic pathology, assisted in the autopsy of the victim. The victim sustained a single gunshot wound that entered the right side of his chest and exited on the back side of the left chest. Powder burns and stippling on the victim's skin indicated that the shot was fired from a distance of two feet or less. The victim's death was a result of an intermediate gunshot wound to the chest and abdomen.

The jury, after being instructed on the elements of second degree murder and the lesser included offenses of voluntary manslaughter, reckless homicide, and criminally negligent homicide, returned a guilty verdict as to second degree murder.

State v. Robert Smith, No. W2005-00015-CCA-R3-CD, 2006 WL 3147056, at *1-2 (Tenn.

Crim. App., at Jackson, Nov. 3, 2006).

The petitioner appealed his second degree murder conviction to this Court, alleging that the evidence was insufficient to support his conviction. This Court affirmed his conviction, <u>Robert Smith</u>, 2006 WL 3147056, at *1-2, and the petitioner filed a timely pro se petition for post-conviction relief. The trial court appointed counsel, and two amended petitions were filed. Following an evidentiary hearing, the post-conviction court issued an order denying post-conviction relief, and the petitioner filed a timely notice of appeal.

**Post-Conviction Hearing.** The post-conviction hearing was held on February 14, 2008, and May 15, 2008. Trial counsel testified that he had multiple theories of the petitioner's case. Trial counsel believed he could argue (1) that someone other than the petitioner shot the victim, (2) that the petitioner shot the victim in self-defense, or (3) that the petitioner shot the victim in the heat of passion and committed only the lesser included offense of voluntary manslaughter. Trial counsel recalled that Travis Watt,[2] the petitioner's son, had been shot in the arm after the fatal shooting on the porch, while fleeing the crime scene in a car. Trial counsel did not request any testing on the bullet from Watt's arm "[b]ecause [he] didn't think it was relevant to whether or not Mr. Smith had shot the victim on the porch," and "[b]ecause Travis was shot in the car as they were pulling off after the shooting on the porch." When pressed further regarding the ballistics evidence, trial counsel stated that "the .32 shell casings in the yard . . . [supported the theory] that there was another gunman present, not necessarily the ballistics of the bullet from the boy's arm."

Trial counsel did not consider Travis Watt's testimony relevant because the issue at trial "was whether or not the gun went off during the middle of the tussle or whether or not there was a second gunman on the porch." Trial counsel emphasized that Watt's testimony would not bolster his theory of self-defense because Watt was shot after the fatal shooting. Trial counsel was also concerned that Watt would damage the petitioner's case because Watt had previously given a statement to the police claiming that his father shot the victim first.

Trial counsel recalled that Reginald Sanders was initially interviewed as a possible gunman responsible for the victim's death. Trial counsel was then questioned regarding a

---

[2] This witness's last name is spelled as "Watts" throughout the parties' briefs. However, we will spell his name as "Watt," consistently with our opinion on direct appeal.

-4-

police report, admitted as exhibits D and E, at the post-conviction hearing.[3]  Exhibit E provided, in pertinent part, as follows:

> 2335 HRS. SGT. MULLINS AND DET. GREER STARTED INTERVIEW WITH WITNESS REGINALD SANDERS AND HE WAS ADVISED OF HIS RIGHTS AND WAIVED HIS RIGHTS AND GAVE A TYPED STATEMENT OF ADMISSION. THIS WITNESS WAS NOT CHARGED WITH ANY CRIME AT THIS TIME.

Trial counsel could not recall whether he questioned Reginald Sanders regarding the "admission" in exhibit E or whether he questioned Sergeant Mullins or Detective Greer regarding the "admission" in exhibit E.  Trial counsel stated he was not concerned with the "admission" because Watt told the police that his father, the petitioner, shot the victim first in an earlier paragraph within the same police report.  The earlier paragraph, admitted as exhibit D provided, in pertinent part, the following:

> 2100 HRS. WRITER AND SGT. MULLINS TOOK A WRITTEN STATEMENT FROM VICTIM TRAVIS WATT WITH HIS MOTHER THERE AS AN OBSERVER.  TRAVIS WATT STATED THAT HE AND HIS DADDY, ROBERT SMITH AND DEXTER WENT OVER ON BRUTONWOOD CV. TO TALK WITH THE OTHER BOY'S DAD ABOUT A FIGHT. TRAVIS WATT STATED THAT THESE OTHER M/B'S CAME UP BEHIND HIM AND WERE SAYING "WE GONNA GET YOU". THAT IS WHEN MY DADDY PULLED OUT HIS GUN AND TOLD EVERYONE TO GET BACK.  TRAVIS WATT STATED THAT THE OTHER BOYS [sic] DADDY GRABBED HIS DADDY AND THEY GOT TO PUSHING AND THEY ENDED UP ON THE FRONT PORCH, **THAT WHEN MY DADDY, ROBERT SMITH, STARTED SHOOTING, THEN THIS OTHER M/B CAME OUT OF THE HOUSE AND STARTED SHOOTING AT THEM.** TRAVIS WATT STATED THAT THEY GOT BACK INTO THE CAR  HE WAS IN THE FRONT PASSENGER SEAT WHEN A BULLET CAME THROUGH THE DOOR AND WINDOW AND HIT HIM IN THE RIGHT ARM.  NOTE: TRAVIS WATT DESCRIBED THE SHOOTER AS WITNESS REGINALD SANDERS. (Emphasis added).

---

[3]The record does not explain why this report was admitted into evidence as two separate exhibits.

To the extent that trial counsel was questioned regarding his failure to cross-examine Albert Smith, the petitioner's brother and co-defendant, trial counsel stated, "The only testimony I felt like needed to be rehabilitated was the fact that he told the jury that his own brother had just gotten out of prison." Trial counsel acknowledged that he did not remember using the words "beyond reasonable doubt" during his closing argument; however, trial counsel stated, "[I] argued the facts of the case. [I] thought that created the reasonable doubt."

Regarding the use of the petitioner's convictions during trial and sentencing, trial counsel was aware that the petitioner had a prior record of felony convictions. He could not, however, recall making any motions to exclude the use of the petitioner's convictions. It was also trial counsel's standard practice to file motions challenging the use of prior convictions when the defendant had a prior record.

Lieutenant J. T. Hester of the Memphis Police Department wrote the report, previously admitted as exhibits D and E, that detailed the chronology of the police investigation in the hours following the shooting. Lieutenant Hester explained his use of the word "admission" in exhibit E as follows:

> [I]t could of [sic] been an admission of being on the scene. He wasn't charged with any crime, so I'm sure it wasn't an admission of a crime. I don't know why I particularly typed that.

Lieutenant Hester further testified that he was not present when Reginald Sanders gave a statement to Sergeant Mullins and Detective Greer, nor did he read Reginald Sanders' statement. Lieutenant Hester confirmed that he was not subpoenaed for the petitioner's trial.

Sergeant Anthony Mullins of the Memphis Police Department testified and recalled taking a statement from Reginald Sanders. He confirmed that Sanders was investigated as a possible suspect. Sergeant Mullins described the statement as follows:

> My memory is that it's a witness/possible suspect statement. Again, that is the practice I commonly use for people that may have been implicated initially or be a person of interest initially but maybe our investigation reveals that they may not be a true suspect. However, to cover our basis [sic] we advise them of his [sic] Miranda Rights which is the common practice if it's a

witness/possible suspect.  The statement – the content of the statement is generally going to be the same.  What did you see?  What did you hear?  What did you do?  But there may be more accusatory questions in the statement and that was the nature of this statement.  There were accusatory questions.

Despite considerable discussion of Reginald Sanders' statement during the post-conviction hearing and in petitioner's brief, the statement itself was never admitted at the hearing or otherwise included in the record on appeal.

Appellate counsel testified that he reviewed the petitioner's prior record and determined that sentencing as a career offender was appropriate.  He did not remember whether the petitioner was on bond when the petitioner committed his prior crimes.  Appellate counsel confirmed that the only issue raised in the petitioner's direct appeal was whether the evidence, primarily the petitioner's mental state, supported the petitioner's conviction for second degree murder.

In large part, the petitioner's testimony at the post-conviction hearing consisted of the petitioner repeating his claims as stated in his petition.  The petitioner testified that he believed trial counsel was ineffective because:

[Trial counsel] argued the case as (indiscernible) Anderson shot the victim instead of me.  Okay.  From the argument and the way that the State witnesses said everybody positioned, it was a legitimate argument.  Okay.  It was facts right there.  But all the State witness said that I was the only person that had a gun.  And, therefore, he should of [sic] had these bullets shell casings tested . . . .

The petitioner stated this evidence would have bolstered his claim of self-defense by refuting the State's witnesses who testified that petitioner was the only person with a gun.  The petitioner was also concerned that trial counsel cross-examined Officer Davis, Officer Harper, and Sergeant Mullins regarding ballistics testing on the bullet recovered from Watt, but the testing was not performed.

The petitioner stated that trial counsel failed to acquire and present to the jury a recording of a 911 telephone call.  The petitioner testified that the 911 call would have shown that Christine Sanders called 911 and reported that her brother, Reginald Sanders, was

shooting. However, the petitioner acknowledged on cross-examination that he had never heard the 911 call. The petitioner further conceded that Christine Sanders testified at trial and said that she did not call 911.

At the close of the petitioner's testimony, post-conviction counsel requested permission from the court to admit "the convictions for which [the petitioner] was on bond at the time he was rearrested and . . . the proof that [the petitioner] was on bond" at a later date. Without objection from the State, on August, 15, 2008, exhibits F through J were admitted into evidence as part of the post-conviction hearing. Exhibit F, a six page document, consists of the following: (1) two true and attested copies of surety bonds numbered 820638 and 820639 in the petitioner's name for the offenses of robbery and felony drug possession from M&M Bond Company; (2) a "Written Undertaking" signed by the petitioner on September 14, 1994, agreeing to appear in court for the same offenses or pay $10,000 for non-appearance which was insured by M&M Bail Co.; (3) a "Written Undertaking" for an unnamed individual[4] to appear in court for a felony drug offense or pay $3,500 for non-appearance insured by M&M Bail Co.; (4) a purported copy of the outside of the petitioner's court jacket in case number 95-01737; (5) a purported copy of the outside of an unnamed individual's court jacket.[5]

Exhibit G is a certified copy of the petitioner's judgment in case number 9501737. The judgment reflects that, on February 27, 1996, the petitioner pled guilty to unlawful possession of less than .5 grams of cocaine with intent to sell or deliver in violation of Tennessee Code Annotated section 39-17-417. He received a six-year sentence to be served concurrently with case numbers 9501738, 9507179, 9410927, 9410928, 9410929, 9505329, 9505330, 9505331, 9505596, 9505597, and 9505598. Exhibit H is a certified copy of the petitioner's judgment in case number 9501738. The judgment reflects that the petitioner pled guilty on February 27, 1996, to robbery in violation of Tennessee Code Annotated section 39-13-401. He received a three-year sentence to be served concurrently with case number 9501737 and all of the case numbers denoted in the same.

---

[4]It is unclear for whom this document purports to insure an appearance in court because the name and signature are blacked-out.

[5]Apparently, when this page of exhibit F was copied, the top portion which denotes the case number and the name of the defendant was omitted. There are voluminous writings on this page of the exhibit which we decline to attempt to interpret.

Exhibit I is a certified copy of Rodney Wickfall's judgment in case number 9505598.[6] The judgment reflects that Wickfall pled guilty on February 16, 1996, to aggravated robbery in violation of Tennessee Code Annotated section 39-13-402. He received a nine-year sentence to be served concurrently with case numbers 9502593, 9502594, 9505596, and 9505597. Exhibit J is a certified copy of the petitioner's judgment in case number 9505596. The judgment reflects that the petitioner pled guilty on February 16, 1996, to aggravated robbery in violation of Tennessee Code Annotated section 39-13-401. The petitioner received a five-year sentence to be served concurrently with case numbers 9505597 and 9505598.

Following the post-conviction hearing, the post-conviction court issued a nine page order denying all of petitioner's grounds for relief. The court concluded that petitioner failed to meet his burden of proof, and the court denied the petition. The petitioner now appeals the court's denial of post-conviction relief.

**Standard of Review.** Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the

---

[6]We are compelled to note that the petitioner admitted all of these documents without any testimony to explain their relevance. We acknowledge that the judgments identifying the petitioner by name have overlapping case numbers with the other sentences to be served concurrently. However, the Wickfall judgment contains a different name and social security number. It is therefore unclear whether the petitioner contends that he was, in fact, convicted as Rodney Wickfall in this case.

conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

>  The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). This standard applies equally to appellate counsel as to trial counsel. Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689, 104 S. Ct. 2065). A court will defer to counsel's tactical or strategic choices as long as they are informed by adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065.

## ANALYSIS

**I. Closing Argument.** The petitioner alleges trial counsel was ineffective because he failed to argue the standard of proof beyond a reasonable doubt during closing argument. Specifically, the petitioner asserts that trial counsel failed to say the words "beyond a reasonable doubt" and failed to articulate the standard more generally as it applied to the evidence of the case. In support of this issue, the petitioner quotes trial counsel during the motion for judgment of acquittal as follows, "The state has not been able to carry their burden beyond a shadow of a reasonable doubt in any way, shape, or form . . . ."[7] Counsel repeated the phrase, and the trial court corrected him, and requested that he not use the phrase "shadow of a doubt" in front of the jury. The petitioner argues that trial counsel then completely avoided the phrase during closing.

Conversely, the State contends the post-conviction court properly determined that trial counsel mentioned the reasonable doubt standard during closing argument and "otherwise went into great detail attacking every part of the State's case." The State further argues that the jury was instructed by the trial court that statements of counsel were not evidence, and that the jury was provided with an instruction on the reasonable doubt standard of review. The State points out that the petitioner does not challenge the trial court's finding of fact on this issue, and merely argues, as a matter of law, that counsel was deficient and presumes prejudice. Finally, the State maintains, as did the trial court, that "there is no legal requirement that counsel mention reasonable doubt to the jury during closing argument." We agree with the State.

---

[7] Although the petitioner repeatedly references the various portions of trial transcript in his brief, he did not include the trial transcript in the record on appeal.

In its detailed order denying relief, the trial court reviewed the trial transcript and determined that counsel was not prohibited from using the words "beyond a reasonable doubt" in closing argument, and that counsel did, in fact, use those words. The trial court further stated that the closing argument "touch[ed] sufficiently upon all of the weaknesses in the state's case and the strengths of the defense, attempting to raise all possible reasonable doubt in the jurors' minds," and that the argument attacked every part of the State's case, "present[ing] the State's theory in its worst light and the defense theory in its best light." Finally, the trial court determined that there is no legal requirement that an attorney explicitly quote the reasonable doubt standard during closing argument.

Upon our review of the record, we agree with the post-conviction court. Although trial counsel could not recall using the specific phrase "beyond a reasonable doubt," trial counsel argued the facts of the case that he believed created a reasonable doubt in the State's theory. The post-conviction court engaged in an exhaustive review of trial counsel's closing argument in the second degree murder trial and determined that trial counsel did, in fact, use the reasonable doubt standard of review in his closing argument. The post-conviction court also properly determined that trial counsel was not required to use the precise phrase "reasonable doubt" in his closing argument. A criminal defendant's federal and state constitutional right to the effective assistance of counsel extends to closing argument; however, courts afford counsel "wide latitude" in how best to present a client's case to the jury. Yarborough v. Gentry, 540 U.S. 1, 5 (2003); Torrez Talley v. State, No. W2009-02036-CCA-R3-PC, 2011 WL 1770485, at *4 (Tenn. Crim. App., at Jackson, May 9, 2011) (considering a claim that trial counsel provided ineffective assistance of counsel by failing to sufficiently argue the standard of proof beyond a reasonable doubt). The post-conviction court's factual findings are conclusive on appeal unless the petitioner can show by clear and convincing evidence that the evidence preponderates against such findings. Vaughn, 202 S.W.3d at 115. The record does not preponderate against the findings of the post-conviction court. Accordingly, the petitioner has failed to demonstrate deficient performance or prejudice as a result. He is not entitled to relief on this issue.

**II. Failure to Prepare and Investigate.** The petitioner alleges that trial counsel was ineffective in failing to adequately prepare and investigate the case. Specifically, the petitioner argues that trial counsel failed to obtain funds for a ballistics expert, failed to examine the bullet recovered from Travis Watt, failed to thoroughly cross-examine witnesses to the crime, and failed to investigate a police report written by Lieutenant J.T. Hester that contained an "admission" concerning Reginald Sanders.

-12-

The petitioner claims trial counsel was ineffective for failing to obtain funds for a ballistics expert and failing to examine the bullet recovered from Travis Watt. He claims that this was deficient and prejudicial because it would have shown that another gunman was present and shooting at the petitioner and his son. According to the petitioner, the evidence would have bolstered his theory of self-defense or the alternative theory that someone else fatally shot the victim. The State contends the trial court properly denied relief because the petitioner failed to provide a weapon to compare to the recovered bullets. The State additionally argues, as pointed out by the trial court, "there were two different shell casings found at the scene which a jury may have found supported a self-defense, and that any ballistics examination of the bullet might have undermined such a defense." We agree with the State.

In denying relief, the post-conviction court stated that the petitioner did not present evidence concerning the benefit to be gained from any additional investigation. The court, quoting Owens v. State, 13 S.W.3d 742, 756 (Tenn. Crim. App. 1999), ruled that the petitioner must show that an investigator or expert would have discovered information favorable to the petitioner's case. The court summarized the evidence at the petitioner's trial, including the presence and location of two different shell casings, the gunshot wound to Watt, and the bullet holes in the car the petitioner used to escape. The court found that additional ballistics evidence would have weakened the petitioner's self-defense claim by demonstrating more conclusively that the bullets that injured Watt and hit the car were fired after the petitioner fatally shot the victim. In the absence of such expert ballistics testimony, according to the court, trial counsel was able to attempt to create reasonable doubt by cross-examining police witnesses regarding the lack of ballistics investigation. The court stated:

> The testimony of witnesses at trial, including those of the petitioner's son and brother, the bullet wound to the petitioner's son and bullet holes in the car used in the petitioner's escape clearly raised the issue of gunshots being fired by others as the petitioner ran away from the killing to his car to leave the scene. No ballistics test was needed to raise this issue.

The record does not preponderate against the findings of the post-conviction court. The proof at the post-conviction hearing established that trial counsel believed ballistics proof was unnecessary to support a claim of self-defense or any other theory of the case. In trial counsel's view, the bullet from Watt was not relevant to the shooting on the porch because Watt was shot as he was fleeing with the petitioner, after the fatal shooting. Trial counsel further opined that there was ample proof of multiple shooters based on the police recovery of both nine millimeter and .32 caliber shell casings in the yard. Trial counsel was

-13-

not questioned regarding obtaining funds for a ballistics expert, and the petitioner offered no other proof on this issue. A petitioner who asserts that he received the ineffective assistance of counsel based upon his attorney's failure to investigate a case properly bears the burden at the post-conviction hearing of demonstrating what that investigation would have revealed. Owens v. State, 13 S.W.3d at 756. The petitioner has not demonstrated by clear and convincing evidence that trial counsel rendered ineffective assistance of counsel on this issue. Accordingly, the petitioner has failed to demonstrate deficient performance or prejudice as a result. He is not entitled to relief on this issue.

The petitioner next claims that trial counsel provided ineffective assistance by failing to thoroughly cross-examine witnesses to the crime. Specifically, the petitioner argues that trial counsel should have questioned Travis Watt, the petitioner's son, and Albert Smith, the petitioner's brother and co-defendant, because they were "sympathetic to [the petitioner's] cause." The petitioner further argues that trial counsel failed to "aggressively" question Reginald Sanders, initially a suspect in the case, Christine Sanders, and an unidentified 911 operator. The State misapprehends the petitioner's issue and argues that the petitioner failed to carry his burden because none of these witnesses were presented at the post-conviction hearing.

This court has previously held that "cross-examination is a strategic and tactical decision of trial counsel which is not to be measured by hindsight." State v. Kerley, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991). "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Trial counsel believed that Watt's testimony was not relevant because Watt was shot *after* the victim was fatally shot. Trial counsel also viewed Watt's testimony as damaging to the petitioner's case because Watt could have testified that his father, the petitioner, shot the victim first. Trial counsel testified that he did not question Albert Smith because he was concerned with Smith's testimony that the petitioner had recently gotten out of prison at the time of the shooting. Rather than repeating this fact in front of the jury, trial counsel strategically decided not to question Smith. All of these decisions were appropriate matters of trial strategy which this court declines to second guess. The petitioner is not entitled to relief regarding this issue.

The only question asked of trial counsel at the post-conviction hearing regarding his cross-examination of Reginald Sanders was whether trial counsel recalled asking Sanders about the "admission" referred to in exhibit D. Trial counsel could not recall, and the petitioner offered no other proof on this issue. In regard to Christine Sanders and her alleged phone call to 911, the petitioner failed to fully develop the record on this issue. The petitioner did not provide a recording of the 911 call and conceded that he had never listened

-14-

to any such recording. The record supports the post-conviction court's denial of relief on this issue. Accordingly, the petitioner has failed to show deficient performance or prejudice as a result. He is not entitled to relief on this issue.

The petitioner further asserts that trial counsel provided ineffective assistance in failing to investigate a police report written by Lieutenant J.T. Hester that contained an "admission" by Reginald Sanders. The petitioner argues that trial counsel should have explored the statement of admission that Sanders gave to police in an effort to prove Sanders' culpability for the victim's death. The State contends this issue is waived because the petitioner did not provide the statement at the hearing or present Reginald Sanders as a witness. We agree with the State.

Concerning this issue, the post-conviction court determined that cross-examination on the subject would not have aided the petitioner's case. The court considered exhibits D and E and the post-conviction hearing testimony of Lieutenant Hester and Sergeant Mullins. The court found that Lieutenant Hester was not present when Sanders gave a statement to police and had no knowledge of the substance of the statement. The court found that Sergeant Mullins was present for Sanders' statement. Although Sanders' statement was never admitted as an exhibit at the post-conviction hearing, the post-conviction court examined the trial record to determine the content of the statement and found that Sanders said "he was inside the house protecting a female family member during the shooting, and denied ever firing a weapon." The court stated that there was no proof that Sanders admitted "anything that might exculpate the petitioner or inculpate himself in the murder."

The record does not preponderate against the findings of the trial court on this issue. Lieutenant Hester testified at the post-conviction hearing that he had no knowledge of the statement that Sanders gave to the police. Rather, he simply prepared the report, exhibits D and E, that indicated Sanders gave an "admission." He testified that he did not believe the statement was an admission of culpability. Sergeant Mullins testified at the post-conviction hearing that he questioned Sanders as a possible suspect and took a statement from Sanders. However, the petitioner did not admit Sanders' actual statement, question trial counsel on the content of the statement, or otherwise include Sanders' actual statement in the record on appeal. Accordingly, the petitioner has not proven deficient performance or prejudice as a result. He is not entitled to relief on this issue.

**III. Prior Convictions at Sentencing.** The petitioner contends that trial counsel was ineffective for failing to challenge four of his prior convictions as "illegal and void" at sentencing. Specifically, the petitioner asserts that these sentences are in direct contravention

of Tennessee Code Annotated section 40-20-111 and Rule 32(c)(3)(C) of the Tennessee Rules of Criminal Procedure, which mandate consecutive sentences when a defendant commits a felony while on bail and is convicted of both offenses. If these convictions were properly challenged by trial counsel, the petitioner insists that he would have been sentenced as Range I standard offender, rather than a Range III career offender. In response, the State contends that the post-conviction court properly denied relief because "nothing on the face of the judgments indicated that the [petitioner] was on bond."

In denying relief on this issue, the trial court stated:

The exhibits offered do not show by clear and convincing evidence that the petitioner committed any offenses while on bond for others. Even if this were in fact the case, the pleas were entered on different days, and this court cannot tell from the evidence presented whether either plea or even which plea would have been void. This court also does not find that an attorney has a duty to collaterally investigate every prior conviction of his client as a matter of course, without some prompting from his client. To prove a deficiency, a petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. See Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 688 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). It is not the "professional norm" of defense attorneys, when appointed or retained to defend a client, to investigate the validity or "voidability" of all their prior convictions. There was no proof presented at the hearings on this petition that the petitioner ever told his attorney that he felt his prior convictions might have had bail bond issues, and it is not normal practice for an attorney to take on such a task as a matter of course.

. . . .

This court also does not find prejudice has been shown by clear and convincing evidence. Even assuming that his trial attorney had done this gratuitous investigation and found the convictions suspect, a separate petition to set aside those pleas would have had to have been filed and litigated separately in other courts. Assuming further that his attorney (or another attorney appointed by those courts to handle those collateral matters) was successful in showing the convictions invalid, the state would have had the right to retry those cases prior to the trial on the instant murder indictment, and

-16-

the petitioner would have had to decide whether to renegotiate the pleas or try them all to separate juries.

We agree with the trial court. Although the petitioner casts this issue as an ineffective assistance of counsel claim, in effect, it is a collateral attack upon his prior convictions. In this vein, Tennessee courts have repeatedly rejected claims in which a defendant attacks a facially valid prior conviction in a subsequent proceeding in which the prior conviction is used to enhance punishment. State v. McClintock, 732 S.W.2d 268 (Tenn. 1987); State v. Prince, 781 S.W.2d 846 (Tenn. 1989); Smith v. State, 757 S.W.2d 683 (Tenn. Crim. App. 1988); State v. Dobbins, 754 S.W.2d 637 (Tenn. Crim. App. 1988). In McClintock, the Tennessee Supreme Court held:

> [U]nless invalid on its face, a prior judgment of conviction in a court with personal and subject matter jurisdiction cannot be collaterally attacked in a subsequent proceeding in which the challenged conviction is used to enhance punishment. The authorized route for attacking a facially valid, final judgment of conviction is by the Post Conviction Procedure Act. An evidentiary hearing can be afforded in that forum and not at the proceeding in which such prior conviction is used. Once invalidated, the enhancement value of the conviction is also nullified, exposing the enhanced sentence on the subsequent conviction to collateral attack as well.

State v. McClintock, 732 S.W.2d at 272.

Our review of the record demonstrates that trial counsel prepared for sentencing by reviewing the petitioner's prior criminal record. Trial counsel determined that the petitioner's status as a career offender was appropriate and could not recall the petitioner being on bond when he committed any previous crimes. Exhibits G, H, I, and J are facially valid judgments. Trial counsel was not obligated to investigate the petitioner's prior convictions beyond the facial validity of the judgments. Willie James Robinson v. State, No. 03-C-01-9205-CR00160, 1993 WL 391141, at *1 (Tenn. Crim. App., at Knoxville, Oct. 6, 1993) perm. to appeal denied (Tenn. Feb. 14, 1994); see also Clayton Arnold Veach v. State, No. 01C01-9204-CR-00140, 1993 WL 75364, at *4 (Tenn. Crim. App., at Nashville, Mar. 18, 1993) perm. to appeal denied (Tenn. July 6, 1993) (concluding that counsel was not ineffective by not investigating numerous prior convictions where the prior convictions are facially valid). Moreover, even if trial counsel challenged the prior convictions at the sentencing hearing, under McClintock, it would have been futile. Williams v. State, 599 S.W.2d 276, 280 (Tenn. Crim. App. 1980). The petitioner has not shown that counsel's

performance was deficient or any resulting prejudice. Accordingly, he is not entitled to relief on this issue.

IV. **Prior Convictions on Appeal.**  Similar to our discussion and analysis in section III of this opinion, the petitioner contends that appellate counsel was ineffective for failing to challenge the validity of his prior convictions in his direct appeal. In response, the State argues the post-conviction court properly denied relief.

The post-conviction court denied relief on this issue based on the same reasoning and analysis employed in section III of our opinion. Again, we agree with the post-conviction court. Appellate counsel, just like trial counsel, has no duty to investigate every one of a client's prior convictions. See Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004) (applying same standards to appellate counsel as trial counsel for purposes of a claim of ineffective assistance of counsel); Willie James Robinson, 1993 WL 391141, at *1 (holding that counsel has no duty to investigate all prior convictions). A failure to do so does not constitute deficient representation. Based on the same authority, reasoning, and analysis in section III of this opinion, the petitioner is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE

-18-