STATE of Tennessee, Appellee,

v.

Jerry DOBBINS, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

April 19, 1988.

Permission to Appeal Denied by Supreme Court July 5, 1988.

E. Covington Johnston, Jr., Franklin, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Nashville, Charles E. Bush, Asst. Atty. Gen., Nashville, Joseph D. Baugh, Dist. Atty. Gen., Franklin, Ron Davis, Asst. Dist. Atty. Gen., Franklin, for appellee.

## OPINION

JONES, Judge.

The defendant, Jerry Dobbins, was convicted of the offenses of auto burglary and grand larceny by a jury of his peers. The jury also found the defendant was a habitual criminal and sentenced him to life imprisonment.

### ISSUES PRESENTED FOR REVIEW

The defendant presents a multitude of issues for our review. The defendant challenges (a) the sufficiency of the evidence, (b) the racial composition of the jury venire, (c) an evidentiary ruling of the trial court regarding the admissibility of a pair of gloves, (d) the admissibility of his statements to the police, (e) comments made by the assistant district attorney general during summation, (f) the refusal of the trial judge to charge lesser included offenses, (g) the right to introduce mitigating circumstances during the habitual criminal phase of the trial, (h) the admissibility of his prior convictions to enhance his punishment to life imprisonment, and (i) the constitutionality of the habitual criminal laws of this State.

## SUFFICIENCY OF THE EVIDENCE

On the evening of December 19, 1984, a van was burglarized while parked in an apartment complex. Entry was gained by breaking the vent window on the driver's side of the vehicle. A purse containing, among other things, approximately $400.00 in cash and a pair of custom-made earrings were stolen from the van. There were two one-hundred dollar bills and a fifty-dollar bill which were described as "fairly new and crisp" and "quarter-folded" included in the money taken. The bills had been folded in half and then folded again. The police were notified immediately.

As the first police officer approached the situs of the burglary, he saw the defendant crossing the street. The officer stopped and ordered the defendant to halt. The defendant immediately dropped an object behind him. The officer held the defendant at gunpoint while waiting for another officer to arrive. During this period the defendant made several efforts to reach his shirt pocket.

The defendant told the officers that the four dollars found in his pants pocket was all the money he had. However, a search of the defendant's shirt pocket revealed two one-hundred dollar bills and a fifty-dollar bill. The bills were crisp, relatively new, and had been folded twice as the victim described. Additional currency was found in the pocket as well. A pair of gloves containing glass particles was found where the officer saw the defendant drop an object.

As the defendant was being taken from the city police station to the Williamson County Jail, the defendant told an officer he would provide information concerning drug trafficking in Williamson County if he was released and not prosecuted for the burglary of the van.

The defendant told the officers he was looking for work when he was stopped. He denied knowledge of the burglary. He contended he had earned the money found on his person by working odd jobs. His aunt testified that the defendant had received approximately $750.00 when his grandmother's home was sold. He suppos-edly received the money between October and December. She also testified the defendant worked part-time between July and the middle of November.

It was established at the sentencing hearing the defendant had been previously convicted of the burglary of a motor vehicle on two separate occasions, burglary second degree, and burglary third degree. The defendant admitted his convictions. Defense counsel stipulated that the certified copies admitted into evidence were correct and the defendant was the person convicted in each instance.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e). This rule is applicable to findings of fact based upon direct evidence, circumstantial evidence, or direct and circumstantial evidence. *Farmer v. State,* 208 Tenn. 75, 343 S.W.2d 895, 897 (1961); *State v. Brown,* 551 S.W.2d 329, 331 (Tenn.1977).

In determining the sufficiency of the evidence, we do not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). Nor may we substitute our inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State,* 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); *Farmer v. State,* 574 S.W.2d 49, 51 (Tenn.Crim.App.1978). To the contrary, we are required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage,* supra.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage,* supra. In *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony for the State and resolves all

conflicts in favor of the theory of the State." 493 S.W.2d at 476.

A criminal offense may be established exclusively by circumstantial evidence. *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958); *Duchac v. State*, 505 S.W.2d 237 (Tenn.1973); *State v. Hailey*, 658 S.W.2d 547, 552 (Tenn.Crim.App.1983). However, before a defendant may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypotheses save the guilt of the defendant." *State v. Crawford*, 225 Tenn. 478, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *State v. Crawford*, supra, 470 S.W.2d at 613.

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *State v. Grace*, supra, the defendant has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). Moreover, this Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record, and any inferences which may be drawn from the facts, are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, supra.

■ There is sufficient evidence contained in the record from which a rational trier of fact can conclude that the defendant is guilty of burglary of a motor vehicle, grand larceny, and is a habitual criminal beyond a reasonable doubt. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

This issue is without merit.

## RACIAL COMPOSITION OF JURY VENIRE

When the defendant exhausted his peremptory challenges, defense counsel wrote upon the jury challenge sheet: "We are out of challenges, but we challenge Number 12, Mr. Marvin Wagster." The trial judge declared a recess upon receipt of the sheet and met with counsel in his chambers. During the conference, the trial court asked defense counsel to explain his note. Defense counsel responded by saying: "Well, we challenge the whole jury panel based on the fact that there are no black people on the panel and for that reason, it doesn't represent a cross-section of the community for Mr. Dobbin's fair trial and due process." Later, he stated: "There is a motion also, that I would like to make as far as this entire panel, because there is [sic] no black people and no black people have been called; so it doesn't represent a cross section." Defense counsel did not request an evidentiary hearing nor did he attempt to introduce evidence to support the motion. The trial court, noting there was no evidence contained in the record to support the motion, denied it.

■ This issue has been waived. The defendant did not address this issue in a timely fashion. Defense counsel did not raise the issue until he had exhausted the defendant's peremptory challenges and the jury had been selected. Tenn.R.App.P. 36(a). However, if this issue had not been waived, we could not reach the merits of the issue. As the trial judge noted, there is no evidence contained in the record to support the motion. Moreover, defense counsel did not introduce evidence to support his motion or request an evidentiary hearing. The statements made by defense counsel during the chamber's conference are not evidence. *Trotter v. State*, 508 S.W.2d 808, 809 (Tenn.Crim.App.1974); *Davis v. State*, 673 S.W.2d 171, 173 (Tenn. Crim.App.1984).

This issue is without merit.

## ADMISSIBILITY OF GLOVES

■ When the defendant was confronted by Officer Barnes and ordered to halt, he

dropped an object behind him. A pair of gloves was subsequently found where the defendant dropped the object. Although it had been raining, the gloves were neither wet nor muddy. Furthermore, it was not cold that evening. No one was wearing a coat. The officer who found the gloves identified them at trial.

The gloves were forwarded to the Tennessee Crime Laboratory for analysis. The analysis revealed that glass was contained on the gloves. The glass particles were too small to determine whether they came from safety glass. Samples of the broken glass from the van were not forwarded to the crime laboratory for comparison.

The defendant argues in this Court that the gloves were not linked to him and were only circumstantially linked to the scene of the burglary. Consequently, the gloves should not have been admitted into evidence. We disagree.

The gloves and the glass content of the gloves were relevant and material. See *State v. Banks*, 564 S.W.2d 947 (Tenn. 1978). This was a circumstantial evidence case. The gloves provided a circumstance which linked the defendant to the burglary of the van. The weight to be given the evidentiary value of the gloves was for the jury to determine.

This issue is without merit.

## ADMISSIBILITY OF STATEMENTS TO POLICE

While the defendant was being taken from the Franklin Police Department to the Williamson County Jail, the defendant told a police officer he would reveal information regarding drug trafficking to the officer if the officer would "cut him some slack" or "get him a break," meaning that the defendant would not be prosecuted for the present offenses.

The defendant did not object to this testimony when it was elicited from the witness. However, when the assistant district attorney general completed his direct examination and passed the witness, defense counsel moved the trial court for a mistrial on the ground the statement indicated the defendant was involved in drugs, a collateral, illegal act, which was highly prejudicial.

In this Court the defendant argues that the statement should not have been admitted into evidence because (a) it was made without *Miranda* warnings and (b) the subject matter of the statement was a collateral, illegal activity which was highly prejudicial to the defendant.

■ The defendant did not predicate his motion for a mistrial on the ground the statement was made without *Miranda* warnings. It is elementary that a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this Court. *State v. Van Zant*, 659 S.W.2d 816, 819 (Tenn.Crim.App.1983); *State v. Leaphart*, 673 S.W.2d 870, 873 (Tenn.Crim.App.1983); *State v. Brock*, 678 S.W.2d 486, 489–490 (Tenn.Crim.App.1984); *State v. Galloway*, 696 S.W.2d 364, 368 (Tenn.Crim.App.1985). Thus, this ground has been waived.

■ As we have stated hereinabove, the defendant failed to make a contemporaneous objection when the defendant's statement was introduced into evidence. Thus, this issue has been waived on this ground as well. Tenn.R.App.P. 36(a); *State v. Pritchett*, 621 S.W.2d 127, 135 (Tenn.1981); *State v. Leach*, 684 S.W.2d 655, 658 (Tenn. Crim.App.1984); *State v. Rhoden*, 739 S.W. 2d 6, 11 (Tenn.Crim.App.1987).

■ However, addressing this issue on the merits, the statement made by the defendant was properly admitted into evidence by the trial court. The appellate courts of this State have consistently held that any *ex post facto* indication by an accused of a desire to evade prosecution may be shown as one of a series of circumstances from which guilt may be inferred. See *Marable v. State*, 203 Tenn. 440, 457, 313 S.W.2d 451, 459 (1958); *Shockley v. State*, 585 S.W.2d 645, 649 (Tenn.Crim.App. 1978) [attempt to suppress or destroy evidence]; *State v. Braggs*, 604 S.W.2d 883, 886 (Tenn.Crim.App.1980) [attempt to evade arrest by hiding]; *State v. Williams*,

638 S.W.2d 417, 421 (Tenn.Crim.App.1982) [flight from the scene of the crime].

This issue is without merit.

## COMMENTS MADE BY ASSISTANT DISTRICT ATTORNEY GENERAL DURING SUMMATION

During summation defense counsel told the jury in part:

> ... Jerry didn't run and he hadn't been running. Why in the world would somebody stay, immediately at the scene of the crime for seven minutes—I think Sgt. Barnes testified that it took him seven minutes to answer the call in this case; why in the world would somebody that had just done what they accused Mr. Dobbins of doing, why in the world would they hang around the van that they had just cracked the window and stole all the stuff out of for seven minutes? What are they going to do; just stand there and wait on the police to get there so they can be arrested? It just doesn't add up.

In rebuttal the assistant district attorney general related to the jury:

> Mr. Dobbins did not run. Why was he in the area seven minutes after the offense occurred? Well, he did not run because Mr. Dobbins was smart enough to know that he didn't want to draw attention to himself and hopefully if he walked casually on and didn't take off running, maybe the officer wouldn't notice him. Unfortunately for him, he did. Why would he stay in the area? Well, he was going to expect that ... [the victim] was going into the house and would be in there for a minute or so and then, back out and discover the burglary and who is going to expect that the police were going to be that close and be there that quickly? I will tell you why he was still in the area. Looking for something else to break into. There are a lot more cars out there around the Winstead apartments, around the condominiums—

Defense counsel objected to the argument of the assistant district attorney general, stating it was highly improper, prejudicial and inflammatory. The trial judge sustained the objection to the argument. The trial judge also admonished the jury to disregard the statements of the assistant district attorney general regarding the defendant's looking for other vehicles to burglarize.

The statement made by the assistant district attorney general to the effect that the defendant remained in the area because he intended to burglarize other motor vehicles exceeded the legitimate bounds of summation. However, the instruction given by the trial court cured this error. Furthermore, this error was harmless. Tenn.R. App.P. 36(b).

We parenthetically note this issue has been waived. The defendant failed to cite authority in support of his argument. See Tenn.R.App.P. 27(a)(7); Tenn.Ct.Crim. App.R. 10(b); *State v. Dakin,* 614 S.W.2d 812, 814 (Tenn.Crim.App.1980); *State v. Hawk,* 688 S.W.2d 467, 472, 473–474 (Tenn. Crim.App.1985).

This issue is without merit.

## FAILURE TO CHARGE LESSER INCLUDED OFFENSES

The defendant asked the trial court to charge the jury regarding the lesser included offenses of petit larceny and concealing stolen property under the value of $200.00. The trial court refused to do so noting that the evidence recovered from the defendant exceeded the sum of $200.00.

In the case *sub judice* the defendant denied his guilt. He told officers he was looking for work in the area and was unaware that a burglary had been committed in the area. He denied involvement in the burglary. Thus, the only issue which the jury was required to determine was the identity of the defendant as the person who burglarized the van and stole the purse.

A court is not required to charge the jury on lesser included offenses when there is no evidence in the record to support a finding of guilt of the lesser offenses. *State v. Mellons,* 557 S.W.2d 497 (Tenn.1977); *State v. Davis,* 649 S.W.2d 12, 14 (Tenn.Crim.App.1982); *State v. Lee,* 618 S.W.2d 320, 323 (Tenn.Crim.App.1981);

*State v. Rhoden,* 739 S.W.2d 6, 11 (Tenn. Crim.App.1987). Here, "the proof clearly makes out the offense for which the defendant was convicted, and there was no credible view of the evidence under which the defendant could have been found guilty of a lesser included offense." *State v. Wright,* 649 S.W.2d 22, 24 (Tenn.Crim.App. 1983).

This issue is without merit.

## THE ADMISSIBILITY OF MITIGATING CIRCUMSTANCES DURING HABITUAL CRIMINAL PHASE

Defense counsel made an opening statement during the habitual criminal phase of the trial. During the course of his statement, defense counsel began relating what he deemed to be mitigating circumstances. The assistant district attorney general interposed an objection. The trial court sustained the objection and instructed the jury not to consider the remarks.

The defendant was called as a witness during the habitual criminal phase, and defense counsel attempted to elicit facts constituting mitigating circumstances from him. Again, the assistant district attorney general objected. The trial court sustained the objection, but permitted defense counsel to make a proffer of proof regarding the testimony he wanted to elicit from the defendant as well as another witness.

■ Once the defendant is convicted of the triggering offense, the only issue to be resolved during the habitual criminal phase of the trial is whether the defendant has the requisite number of prior convictions required by our statutes. See T.C.A. § 39–1–801, et seq.; *Delay v. State,* 563 S.W.2d 905, 907 (Tenn.Crim.App.1977); *Moultrie v. State,* 584 S.W.2d 217, 219–220 (Tenn.Crim.App.1978); *State v. Duffel,* 665 S.W.2d 402, 404 (Tenn.Crim.App.1983). In *Moultrie* this Court said:

> The habitual criminal statutes are explicit. The only function of the jury in such cases is to hear proof on prior convictions of a defendant, upon charges constituting felonies under the statute, and to determine if a defendant's record of recidivism warrants enhanced punishment

as prescribed. The statutes themselves fix the enhanced punishment at life in the penitentiary. The jury does not have latitude to consider the matter in any other light. There is no opportunity to assert prejudices or entertain any predilections to avoid the law.

584 S.W.2d at 219–220.

■ In *Delay v. State,* supra, the defendant sought to introduce evidence of his present good behavior through the testimony of his wife. The trial court apparently would not let the wife testify concerning the defendant's good behavior; and the trial court would not permit the defendant to make an offer of proof regarding the matter. This Court ruled the trial court did not commit error in refusing the offer of proof. This Court stated: "The only issue at this trial was the validity of Johnson's prior convictions." 563 S.W.2d at 907.

We conclude from the foregoing authorities that the defendant was not entitled to introduce mitigating facts and circumstances during the habitual criminal phase of the proceedings.

This issue is without merit.

## ADMISSIBILITY OF PRIOR CONVICTIONS TO ENHANCE PUNISHMENT

■ The State introduced four (4) prior convictions during the sentencing phase to establish that the defendant was a habitual criminal. In each instance the conviction resulted from the defendant's plea of guilty to the named offense.

The defendant contends his prior convictions cannot be used to establish his status as a habitual criminal because he was not advised, when he entered his pleas of guilty, that the convictions could be used at a later date to establish he was a habitual criminal. The State contends the defendant's attack upon his prior convictions constitutes an impermissible attack upon facially valid convictions. The State forcefully argues that the Tennessee Post–Conviction Procedure Act provides the exclusive remedy for collateral attacks upon facially valid judgments.

The appellate courts of this State have repeatedly held the Post–Conviction Procedure Act provides the exclusive remedy for collaterally attacking a facially valid judgment. *State v. Gallaher,* 730 S.W.2d 622 (Tenn.1987) [prior conviction being used to enhance punishment]; *State v. McClintock,* 732 S.W.2d 268 (Tenn.1987) [prior conviction being used to enhance punishment]; *Ellison v. State,* 549 S.W.2d 691 (Tenn. Crim.App.1976) [prior conviction to be used to impeach the defendant]; *Everhart v. State,* 563 S.W.2d 795 (Tenn.Crim.App. 1978) [prior conviction being used to establish that the defendant was an habitual offender within the meaning of the Motor Vehicle Habitual Offender Act]; *Monroe v. State,* 569 S.W.2d 860 (Tenn.Crim.App. 1978) [prior conviction being used to establish that the defendant was a habitual offender within the meaning of the Motor Vehicle Habitual Offender Act]; *State v. Evans,* 669 S.W.2d 708 (Tenn.Crim.App. 1984) [prior conviction being used to establish that defendant was a habitual criminal]. When, as here, the prior convictions are sought to be used for the purpose of enhancing punishment, the defendant may not, as a matter of law, collaterally attack a prior conviction as part of the prosecution for the substantive offense alleged in the indictment. *State v. Gallaher,* supra; *State v. McClintock,* supra; *State v. Evans,* supra. While both *Gallaher* and *McClintock* address the collateral attack of prior convictions being used to enhance the punishment for a pending prosecution for driving while under the influence, the principles of law set forth in these opinions are applicable to habitual criminal proceedings. *State v. Evans,* supra at 712–713, cited with approval in *State v. McClintock,* supra.

The record reveals no objection was interposed when the certified copies of the prior judgments of conviction were introduced; and the defendant subsequently stipulated the judgments of conviction were correct and the defendant was the person convicted. Thus, this issue has been waived. See Tenn.R.App.P. 36(a).

The issue is without merit.

## CONSTITUTIONALITY OF HABITUAL CRIMINAL LAWS

The defendant contends the habitual criminal laws of this State are unconstitutional. He contends these laws violate the double jeopardy provisions of the United States and Tennessee Constitutions. He further contends that a mandatory life sentence constitutes cruel and unusual punishment, which is proscribed by the United States and Tennessee Constitutions. We disagree.

■ The use of prior convictions to enhance the punishment for a subsequent felony does not violate the double jeopardy provisions of either the Fifth Amendment to the United States Constitution or Article I, § 10 of the Tennessee Constitution. *Graham v. West Virginia,* 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912); *Pearson v. State,* 521 S.W.2d 225 (Tenn.1975); *Hobby v. State,* 499 S.W.2d 956 (Tenn.Crim.App. 1973); *Moore v. State,* 563 S.W.2d 215 (Tenn.Crim.App.1977). The enhanced punishment in these cases is for the new or triggering offense. No additional punishment is assessed on the criminal offenses for which the defendant was previously convicted and punished.

■ A mandatory life sentence, imposed because the defendant is a habitual criminal, is not per se cruel or unusual punishment within the meaning of the 8th Amendment to the United States Constitution or Article I, § 16 of the Tennessee Constitution. *State v. Busler,* 704 S.W.2d 310 (Tenn.1986); *State v. Cole,* 665 S.W.2d 407 (Tenn.Crim.App.1983); *State v. Hall,* 667 S.W.2d 507 (Tenn.Crim.App.1983); *State v. Freeman,* 669 S.W.2d 688 (Tenn. Crim.App.1983). Moreover, the imposition of a life sentence in the case *sub judice* does not constitute cruel and unusual punishment based upon the facts contained in the record. See *Marsh v. State,* 561 S.W. 2d 767 (Tenn.Crim.App.1977); *State v. Freeman,* supra. In *Marsh* the defendant was convicted of auto burglary and sentenced to life imprisonment as a habitual criminal. This Court affirmed both the conviction and the sentence.

The defendant had four (4) prior convictions before the commission of the present offense. The defendant was convicted of auto burglary on October 28, 1982, and September 27, 1983. He was convicted of burglary second degree on September 27, 1983, and burglary third degree on April 25, 1983. The present or triggering offense is alleged to have occurred on December 19, 1984. The dates of his convictions, the date of the present offense, and the relatively brief period of time in which the convictions occurred and the present offense was committed, strongly indicate that the defendant is a professional burglar. Consequently, the likelihood that the defendant possesses the characteristics, traits and desire necessary for one to rehabilitate himself are extremely remote.

These issues are without merit.

The judgment of the trial court is affirmed.

DAUGHTREY and REID, JJ., concur.