FILED

12/13/2024

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 10, 2024

**STATE OF TENNESSEE v. RAYMOND MEFFORD**

**Appeal from the Circuit Court for Robertson County**
**No. 74CC4-2023-CR-269      Robert T. Bateman, Judge**

———————————————

**No. M2024-00160-CCA-R3-CD**

———————————————

The Defendant, Raymond Mefford, was convicted of two counts of aggravated assault following a bench trial in the Robertson County Circuit Court. He was sentenced to serve four years in confinement. On appeal, the Defendant challenges the trial court's denial of alternative sentencing, arguing that the trial court should have offered the elderly and homeless Defendant rehabilitative treatment in the form of housing assistance or work programs. Following our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Roger E. Nell, District Public Defender; Kendall Stivers Jones (on appeal) and Dan Dalrymple (at trial), Assistant District Public Defenders, for the appellant, Raymond Mefford.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Robert J. Nash, District Attorney General; and Ann M. Kroeger, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.      FACTUAL AND PROCEDURAL HISTORY**

The Defendant was arrested following an altercation outside a wine and liquor store in Springfield on April 2, 2023. A Robertson County grand jury charged him with two counts of aggravated assault. *See* Tenn. Code Ann. § 39-13-102(a)(1). A bench trial ensued on September 11, 2023.

The proof at trial demonstrated that Star Wine and Spirits ("Star Wine") was in a strip mall next to Kroger in Springfield. Although the Defendant had been banned from both Star Wine and Kroger due to his disruptive behavior, he frequently panhandled from a grassy area in the parking lot of these businesses. The Defendant was usually intoxicated, and he panhandled to obtain money for more alcohol. While panhandling, the Defendant carried a metal pole with a screw attached to the end to help retrieve aluminum cans. Due to his intoxication and often boisterous behavior, the Defendant had been arrested approximately twenty times while present on this property.

Sean Mahn was employed at Star Wine and was quite familiar with the Defendant. Although the Defendant was often the source of customer complaints, Mr. Mahn generally maintained a rapport with the Defendant and sought to de-escalate situations involving him. Mr. Mahn had seen the Defendant on numerous occasions with a green-handled pocketknife. The Defendant would sharpen this knife while sitting on the sidewalk and threaten to "cut" or "stab" any police officers who attempted to arrest him.

In the late afternoon of April 2, 2023, the Defendant was panhandling from his usual spot in the grassy area about fifty feet from the entrance to Star Wine. Mr. Mahn was working that day, and multiple customers started to complain about the Defendant's disruptive behavior outside. Hoping he could defuse the situation by talking with the Defendant, Mr. Mahn approached the Defendant and offered him a small "airplane" bottle of liquor and told him that he needed to "mosey on" before the police arrived. Rebecca Harris, Mr. Mahn's girlfriend, was visiting Mr. Mahn while on break from her nearby job, and she was with Mr. Mahn as he approached the Defendant.

The Defendant did not accept Mr. Mahn's overture. The Defendant, apparently offended by Mr. Mahn's suggestion, produced his green-handled knife, asked Mr. Mahn if he "wanted to get cut," and swung the blade of the knife in the direction of Mr. Mahn and Ms. Harris. Mr. Mahn and Ms. Harris immediately backed away from the Defendant in fear. Mr. Mahn pushed Ms. Harris to the side in an effort to focus the Defendant's attention on Mr. Mahn instead. The Defendant continued to approach the couple with the knife until they had backed all the way to the entrance of Star Wine.

As the couple backed away, the Defendant continued swinging the knife and eventually got close enough to Mr. Mahn that Mr. Mahn kicked the Defendant to protect himself. The Defendant stumbled and fell, dropping the knife, which allowed Mr. Mahn to pick it up and secure it. When the police arrived, Mr. Mahn gave the knife to them, and he and Ms. Harris told them what had happened. Officer Nicole Carver with the

Springfield Police Department arrested the Defendant and noted that he was making "[s]exual, derogatory and threatening comments" towards her and that he was being "[h]is normal belligerent loud self[.]"

The Defendant testified at trial and disputed the accounts of Mr. Mahn and Ms. Harris. According to the Defendant, Mr. Mahn initiated the physical contact by picking up the Defendant's metal pole and striking him with it, breaking the Defendant's arm in two places as well as his ankle. The Defendant denied owning a green-handled knife, instead saying that his knife was purple and that he never produced it during the encounter. The Defendant stated that he had only consumed one alcoholic drink by the time of this altercation.

The trial court convicted the Defendant of two counts of aggravated assault. The trial court ordered a presentence investigation and scheduled the sentencing hearing for December 13, 2023.

At the sentencing hearing, the State introduced the Defendant's presentence investigation report, as well as certified copies of nine judgments of misdemeanor convictions against the Defendant. These exhibits showed that the Defendant, seventy-eight years old at the time of sentencing, had a criminal history dating back to 1972 and including arrests in five states. His out-of-state conviction record included two convictions from Navasota, Texas, for unlawful carrying of a weapon in 2011. His criminal record in Tennessee dated back to 2017 and included one conviction for vandalism, a Class E felony; one conviction for attempted vandalism; two convictions for possession of drug paraphernalia; one conviction for criminal trespassing; three convictions for public intoxication; and five convictions for failure to appear in court.

The Defendant dropped out of school around the sixth grade to work on his family's farm. The Defendant never had a steady job, but instead performed tasks such as yard work and landscaping for cash. Most recently, he obtained his income by selling scrap metal and glass. Prior to his incarceration in this case, the Defendant lived in a homeless encampment behind Kroger.

The Defendant drinks every day and has done so for as long as he can remember. The Defendant has never sought treatment for his alcohol use, nor does he believe that he needs to. On his risk and needs assessment, he received an overall risk score of "high-violent." The assessment's criminogenic needs section indicates that the Defendant does not believe that the rules of incarceration or supervision apply to him, and it further indicates that the Defendant does not recognize a need to change his lifestyle.

- 3 -

The Defendant decided to testify at the sentencing hearing and, consistently with the account he provided at trial and in the presentence report, denied the allegations against him and claimed he was the one who was attacked by Mr. Mahn.

Following the Defendant's testimony, the prosecutor asked the trial court to impose a sentence of "four to five years" in incarceration. Defense counsel conceded, "I don't think [the Defendant] is a good candidate for probation so I am not going to argue for that. I don't think that would set him up for success." Defense counsel further conceded that the Defendant had an extensive criminal history but noted that the Defendant did not actually "hurt anybody" and that, while the Defendant had been "drunk in public," he was "not a future menace to society." Defense counsel ultimately asked the court to impose a sentence of three years as a Range I offender.

In ruling, the trial court listed the statutorily mandated sentencing factors that it had considered. The trial court found that the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. *See* Tenn. Code Ann. § 40-35-114(1). It declined to apply enhancement factor (9)—that the Defendant possessed or employed a deadly weapon during the commission of the offense. *See id.* -114(9). Noting there were two separate victims in this case, the trial court set the sentence length at four years as a Range I offender on both counts but ordered the sentences to run concurrently. The trial court concluded, "As to the issue of confinement under [section] 40-35-103, based upon the history of [the Defendant], the Court believes the confinement is necessary[.]" Following motion for new trial proceedings, the Defendant timely appealed.

## II.    ANALYSIS

The Defendant argues that the trial court erred by denying him "a suspended or partially suspended sentence." The State responds that the trial court properly exercised its discretion in denying alternative sentencing.

When an accused challenges the length of a sentence or manner of service, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to "questions related to probation or any other alternative sentence"). The party challenging the sentence imposed by the trial court has the burden of establishing that

the sentence is erroneous.  Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute."  *Bise*, 380 S.W.3d at 709-10.  Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result.  *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).  Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," a punishment sufficient "to prevent crime and promote respect for the law," and consideration of a defendant's "potential or lack of potential for . . . rehabilitation[.]"  Tenn. Code Ann. § 40-35-102(1), (3), (5); *see Carter*, 254 S.W.3d at 344.  Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]"  Tenn. Code Ann. § 40-35-103(2), (4).

The Sentencing Reform Act was enacted in order "to promote justice" and "assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions."  Tenn. Code Ann. § 40-35-102.  In determining the proper sentence, the trial court must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; (7) any statement the defendant wishes to make on the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. Tenn. Code Ann. § 40-35-210(b).

A trial court should consider the following when determining a defendant's suitability for alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). The advisory sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, *should be* considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A) (emphasis added). However, no longer is any defendant entitled to a presumption of being a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347. "A court shall consider, but is not bound by, the advisory sentencing guideline in" section 40-35-102(6). Tenn. Code Ann. § 40-35-102(6)(D).

We begin by noting that the Defendant has come dangerously close to waiving any argument for alternative sentencing on appeal. Defense counsel conceded at the sentencing hearing that the Defendant was not "a good candidate for probation" and that probation would not "set him up for success." For these reasons, defense counsel stated that he would not be asking for the Defendant to be placed on probation. In fact, defense counsel seemed resigned to the fact that the Defendant would receive an incarcerative sentence and appeared only to ask the trial court to set the minimum sentence length for a Range I offender. The Defendant now argues that he should have been granted an alternative sentence, but "a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this [c]ourt." *State v. Dobbins*, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988). Nevertheless, defense counsel's argument at sentencing could be construed as conceding the Defendant's unsuitability for full probation while not necessarily foreclosing the possibility of some other form of alternative sentencing, such as periodic or split confinement. Therefore, we will review the Defendant's issue on the merits.

In this case, the trial court conducted a full sentencing hearing in accordance with Code sections 40-35-209 and -210. The trial court properly applied enhancement factor (1) related to the Defendant's prior criminal history, and it properly denied the application of enhancement factor (9), as an element of the Defendant's offenses included the use or display of a deadly weapon. *See* Tenn. Code Ann. §§ 39-13-102(a)(1)(A)(iii); 40-35-114(1), (9). The Defendant was not entitled to be considered a favorable candidate for alternative sentencing pursuant to Code section 40-35-102(6)(A), because the record is

replete with "evidence to the contrary," notably, his prior criminal history, his lack of employment, his chronic substance abuse, and his lack of a desire to seek treatment for his alcoholism. Referring specifically to Code section 40-35-103, the trial court concluded that confinement was necessary based upon the Defendant's history.

We respectfully disagree with the Defendant's contention on appeal that the "record reflected that absolutely no efforts had been made to provide [the Defendant] with rehabilitative treatment in the form of housing assistance or work programs[.]" At best, the record is silent on this question. Any argument that the Defendant should now be offered such assistance as part of an alternative sentence is undercut by the results of his risk and needs assessment, which indicate that he sees no need to change his lifestyle and that he does not believe the rules of supervision apply to him. The Defendant's sentence is presumed reasonable, and the trial court did not abuse its discretion by imposing it.

### III. CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE