# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned On Briefs October 1, 2013

## STATE OF TENNESSEE v. KENNETH SPENCER

**Appeal from the Criminal Court for Shelby County**
**No. 09-00769    Paula Skahan, Judge**

---

**No. W2012-02720-CCA-R3-CD  -  Filed April 10, 2014**

---

A Shelby County jury convicted Appellant, Kenneth Spencer, of first degree premeditated murder. The trial court sentenced Appellant to life imprisonment. Appellant appeals his conviction arguing that the evidence was insufficient to prove premeditation and that the trial court erroneously allowed the introduction of weapons and ammunition. On appeal, the State concedes that the trial court erred, however, the error was harmless. After a review of the record on appeal, we conclude that there was sufficient evidence to support the jury's finding that premeditation existed and that the introduction of the evidence in question was error, but it was harmless error. Therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Stephen C. Bush, Public Defender and Tony N. Brayton, Assistant Public Defender, (on appeal); Cliff Abeles and William Robilio, Assistant Public Defenders, (at trial), for the appellant, Henry Bates.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Colin Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

As accredited by a jury verdict, the proof shows that Antonio Delk and the victim, John Baker, were neighbors. Appellant and Delk were involved in an ongoing altercation. Upon their initial meeting, Appellant shot Delk in the arm. A week later, on November 7, 2008, Appellant was riding in a car driven by Patrick Jefferson looking for Delk. Appellant got out of the car and Jefferson heard gunshots. Appellant subsequently ran back to Jefferson's car.

Later that evening, the victim's son, Terrance Baker, arrived home and saw his father, the victim, sitting in his office chair. Baker thought that his father was slouched in his chair in an awkward position. He called his father's name, but he got no response. He went and tapped his father on the hand. Baker said that his father's hand was cold. He began to shake his father and put his arms around him. When Baker put his hand behind his father's head, he discovered that his hand was covered in blood. He called 911. Later, Dr. Marco Ross, the deputy chief medical examiner for Shelby County, determined that the victim died as a result of a single gunshot wound to the head.

A jury trial was held on October 8, 2010. The State's theory was that the victim was struck by a stray bullet fired by Appellant as he shot Antonio Delk. A Shelby County jury convicted Appellant of first degree premeditated murder. The trial court imposed a life sentence. Appellant appealed his conviction to this Court. *State v. Kenneth Spencer*, No. W2010-02455-CCA-R3-CD, 2011 WL 6147012, at *1 (Tenn. Crim. App., at Jackson, Dec. 8, 2011). This Court reversed the judgment and remanded for a new trial because "the trial court committed reversible error by granting the State's request for a special jury instruction on premeditation." *Id.* at *14. On remand, a jury again convicted Appellant of first degree premeditated murder, and the trial court sentenced Appellant to a life sentence.

## ANALYSIS

### Sufficiency of the Evidence

On appeal, Appellant argues that the evidence was insufficient to support his conviction for premeditated first degree murder. He specifically argues that the evidence is insufficient to establish premeditation.

-2-

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally deemed with a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Bland*, 958 S.W.3d at 659; *Tuggle*, 639 S.W.2d at 914.

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

First degree murder is described as "[a] premeditated and intentional killing of another; . . . ." T.C.A. § 39-13-202(a). A defendant may be guilty of premeditated first degree murder even though the victim was an unintended victim, so long as the State proves the elements of intent, premeditation, and deliberation for the killing of an intended victim. *See State v. Ely*, 48 S.W.3d 710, 723-24 (Tenn. 2001); *Millen v. State*, 988 S.W.2d 164, 168 (Tenn. 1999). Tennessee Code Annotated section 39-13-202(d) provides that:

"[P]remeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

An intentional act requires that the person have the desire to engage in the conduct or cause the result. T.C.A. § 39-11-106(a)(18). Whether the evidence was sufficient depends entirely on whether the State was able to establish beyond a reasonable doubt the element of premeditation. *See State v. Sims*, 45 S.W.3d 1, 7 (Tenn. 2001); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). Whether premeditation is present is a question of fact for the jury, and it may be inferred from the circumstances surrounding the killing. *State v. Young*, 196 S.W.3d 85, 108 (Tenn. 2006); *see also State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000); *State v. Pike*, 978 S.W.2d 904, 914 (Tenn. 1998).

Premeditation may be proved by circumstantial evidence. *See, e .g., State v. Brown*, 836 S.W.2d 530, 541-42 (Tenn. 1992). Our supreme court has identified a number of circumstances from which the jury may infer premeditation: (1) the use of a deadly weapon upon an unarmed victim; (2) the particular cruelty of the killing; (3) the defendant's threats or declarations of intent to kill; (4) the defendant's procurement of a weapon; (5) any preparations to conceal the crime undertaken before the crime is committed; (6) destruction or secretion of evidence of the killing; and (7) a defendant's calmness immediately after the killing. *See State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997); *Pike*, 978 S.W.2d at 914-15. This list, however, is not exhaustive and serves only to demonstrate that premeditation may be established by any evidence from which the jury may infer that the killing was done "after the exercise of reflection and judgment." T.C.A. § 39-13-202(d); *see Pike*, 978 S.W.2d at 914-15; *Bland*, 958 S.W.2d at 660.

One learned treatise states that premeditation may be inferred from events that occur before and at the time of the killing:

Three categories of evidence are important for [the] purpose [of inferring premeditation]: (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, planning activity; (2) facts about the defendant's prior

relationship and conduct with the victim from which motive may be inferred; and (3) facts about the nature of the killing from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.

2 Wayne R. LaFave, Substantive Criminal Law § 14.7(a) (2d ed. 2003).

In the case at hand, the following evidence was presented that supports the jury's finding of premeditation. On Halloween night in 2008, Antonio Delk attended a party in his neighborhood. While at the party, he accidentally bumped into Appellant. The two men began pushing each other. Appellant pulled out a gun. The altercation moved outside along with several bystanders. Delk heard his friend say "KJ, you know what it is." KJ referred to Kwane Morris, who was with Appellant. Almost immediately, Delk heard gunshots, and he was hit in the forearm. Delk's friend, Dedrick Nelson, saw Appellant and Morris shooting guns. Delk went to the hospital where a bullet was removed from his arm.

On November 7, 2008, Delk and a friend attempted to go to a party on Harvest Knoll. They were denied entry. Nelson saw Morris at the party. He returned to his home on East Foyle Cove. When he arrived on his street, he saw some people he knew, including "Big Rob" Cole, parked on the street. Delk spoke with them and then drove away.

On November 7, 2008, Jefferson drove his Lincoln to a party on Harvest Knoll. He was accompanied by K.J. Morris and Appellant. When they arrived, the party was full. They left the party and Jefferson drove through the neighborhood following Morris's directions. Morris was telling Jefferson how to get to Delk's house. When they arrived on Delk's street, someone in the car pointed out Delk's house or car. Jefferson saw two cars parked in the street, but he drove past them. However, Morris said that Delk was with the two cars. After driving down the street, Jefferson pulled over to text his girlfriend. Appellant got out of the car. Jefferson said, "Don't do nothing crazy." Jefferson testified that he had a bad feeling about Appellant getting out of the car. Jefferson saw Appellant walk away from the car towards the houses. Shortly thereafter, Jefferson heard a couple of gunshots. Appellant ran back to the car, and Jefferson drove to Appellant's house.

Detective Sergeant Matthew Keaton with the Shelby County Sheriff's Office interviewed Appellant twice as part of his investigation of the shooting death of the victim. At the second interview, Appellant told Detective Keaton that "he went out with the intention that night, in his own statement, to kill Arsenio Delk, to get Arsenio Delk."

As stated above, our supreme court has set out factors from which the trier of fact may infer premeditation. Appellant points out that only one factor in the list, the victim was unarmed, is present in the case at hand. However, it is also true that this list is not exhaustive and the jury can rely on other evidence to infer premeditation. T.C.A. § 39-13-202(d); *see Pike*, 978 S.W.2d at 914-15; *Bland*, 958 S.W.2d at 660.

In the case at hand, there was evidence presented that Delk and Appellant were involved in some sort of altercation on October 31, 2008, just a week before the victim's death. During this altercation, Appellant shot Delk in the arm. On November 7, 2008, both Delk and Appellant attempted to attend a party in the neighborhood shared by Delk and the victim. All were denied entry. Appellant and his friend told Jefferson to drive the car to Delk's house and gave him directions to the house. Jefferson said that he had a bad feeling about Appellant getting out of the car and told him not to do anything stupid. He then heard gunshots and Appellant ran back to Jefferson's car. Furthermore, Appellant told Detective Keaton that he went out that night with the intention to kill Delk. Unfortunately, a bullet apparently struck the victim.

We conclude that this evidence is sufficient for a jury to infer premeditation. In other words, Appellant's shooting the gun in the victim's neighborhood was done "after the exercise of reflection and judgment." T.C.A. § 39-13-202(d); *see Pike*, 978 S.W.2d at 914-15; *Bland*, 958 S.W.2d at 660.

Therefore, this issue is without merit.

### Admission of Firearms Evidence

Appellant also argues that the trial court erred when it allowed certain handguns and ammunition found during a search and unrelated to the victim's death into evidence because the evidence was irrelevant. The State concedes that the trial court improperly allowed the introduction of the handguns and ammunition into evidence but argues that the error was harmless.

The handguns and ammunition in question were discovered by officers as the result of searches pursuant to search warrants of Appellant's house and Morris's house. At Appellant's house, officers discovered a .32 caliber semiautomatic handgun, a .177 caliber pellet pistol, a .22 revolver, a box of nine-millimeter ammunition, a box of .32 caliber rounds, and a box of .380 automatic ammunition. At Morris's house they discovered a Bryco Arms .380 semiautomatic pistol and a loaded .40 caliber handgun. The .40 caliber handgun was the only discovered weapon connected to the murder. It was determined to be the murder weapon by a TBI forensic firearms examiner.

Prior to trial, Appellant filed a motion in limine to exclude the weapons and ammunition. Appellant argued that the introduction of the weapons and ammunition was not relevant pursuant to Rules 401, 402, and 403 of the Tennessee Rules of Evidence, and that even if they were relevant their introduction at trial would be more prejudicial than probative.[1] The State argued that the weapons and ammunition were part of its case. According to the State, when the bullet was removed from the victim during the autopsy, the weapons and ammunition were sent to the TBI to be tested. Also, the State said that it intended to introduce testimony that all of the weapons and ammunition were found during the searches.

The trial court made the following ruling:

> Okay. I mean, I can, I guess kind of see splitting the baby. I think the State has the right to say that, you know, we did everything we could to have everything tested thoroughly and can be shown to the witness, can be shown to the witness, can be marked as evidence, but I don't see any reason that guns that were not used on the night in question should be piled up on a table and left there for the jurors to look at if they're not the gun in question.

> I think they can be put in a bag and moved out of the way. Frankly, I think that is prejudicial.

> And so, I certainly will allow the State to have items marked into evidence that they feel shows their case, but there's no reasons to leave something – a number of weapons just left out on the table like that in front of the jury throughout the entire trial.

> And so, I think that's a fair balance between the two interests.

> . . . .

> So, those weapons will be put in a bag or something else and they will be taken out of the jury's view after they're introduced.

---

[1] In his brief, Appellant argues that the weapons and ammunition should not have come in under Rule 404(b) of the Tennessee Rules of Evidence as a prior bad act. However, Appellant did not argue this in his written motion in limine, verbally at the pre-trial hearing, or in his motion for new trial. A party may not take one position regarding a ground in the trial court and change its strategy or theory midstream and advocate a different ground or reason in this Court. *See State v. Aucoin*, 756 S.W.2d 705, 715 (Tenn. Crim. App. 1988); *State v. Dobbins*, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988).

When dealing with the propriety of evidence, the proposed proof must satisfy the threshold determination of relevancy mandated by Tennessee Rule of Evidence 401. This rule defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Rule 403 adds that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

We agree with the State's concession. The introduction of weapons and ammunition discovered at both Appellant's and Morris's houses that were not even related to the issue at hand was an abuse of discretion. We now turn to whether this requires a reversal of Appellant's conviction.

We note that Tennessee Rule of Appellate Procedure 36(b) states that "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Our supreme court has given further guidance in these matters by stating that "the line between harmless and prejudicial error is in direct proportion to the degree . . . by which the proof exceeds the standard required to convict." *Delk v. State*, 590 S.W.2d 435, 442 (Tenn. 1979); *see also, e.g., State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999).

In the case at hand, we conclude that the evidence was overwhelming so that the error was harmless. There was ample evidence presented that Appellant and Delk were engaged in an altercation a week before the death of the victim. Appellant shot Delk in the arm during the altercation. On the night in question, multiple witnesses stated that they saw a car matching the description of Jefferson's car. Jefferson admitted that he drove Appellant and Morris through the neighborhood on the night in question. Jefferson testified that Appellant and Morris were directing him to Delk's house which was in the same neighborhood as the victim's house. Jefferson stated that he told Appellant not to do anything stupid because Jefferson had a feeling that something bad would happen. Finally, Appellant admitted to officers during an interview that he went to the neighborhood that night to shoot Delk and that he indeed fired the gun. This evidence when taken as a whole is overwhelming proof of Appellant's guilt. We conclude that the admission of the weapons and ammunition, while error, did not contribute to the jury's verdict in the face of the overwhelming evidence of guilt.

Therefore, this issue is without merit.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.


_____
JERRY L. SMITH, JUDGE